IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELMIRA C. SEXTON,** | : |
| **Plaintiff** | : **No. 1:12-CV-00402** |
| v. | : |
| **COUNTY OF YORK, PENNSYLVANIA t/b/d/a YORK COUNTY YOUTH DEVELOPMENT CENTER; RODNEY WAGNER, individually and in his official capacity as Director of YDC** | : **JUDGE SYLVIA H. RAMBO** |
| **Defendants** | : |

# M E M O R A N D U M

Before the court is Defendants County of York, Pennsylvania, t/b/d/a York County Youth Development Center ("YDC") and Rodney Wagner's partial motion to dismiss Plaintiff's 42 U.S.C. §1983 First Amendment retaliation claim and claim for violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq*. Defendants seek dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants motion will be granted in part and denied in part.

**I.      Background**

   **A.    Facts**[1]

Plaintiff, Elmira C. Sexton, brought this suit against YDC and Rodney Wagner alleging that her employment was terminated in retaliation for exercising her First Amendment right to speak out on alleged violations involving children under

---

[1] As required when deciding a motion to dismiss, the court will accept as true all properly-pleaded factual allegations contained in the complaint.

the care, custody and control of YDC as well as violations of internal policies and procedures at YDC. (Count I.) Plaintiff also claims that she was terminated as a result of making good-faith reports of wrongdoing and/or waste, in violation of Pennsylvania's Whistleblower Law, 43 P.S. § 1421 *et seq*. (Count II.)[2]

YDC is an emergency shelter for children that is owned and operated by York County, Pennsylvania. (Compl. ¶¶ 5-6.) Rodney Wagner ("Wagner") was, at all times relevant hereto, employed by York County as director of YDC. (*Id.* ¶ 7.) Plaintiff was hired by YDC on or about March 6, 2000, and, at all times relevant hereto, served as a shift supervisor at YDC. (*Id.* ¶¶ 9, 10.) As a shift supervisor, Plaintiff was responsible for general supervision of staff and residents at YDC, and also was tasked with assuring compliance with applicable protocols and regulations. (*Id.* ¶ 11.) Additionally, Plaintiff was responsible for monitoring the implementation of the Sanctuary Model, an internal policy or methodology designed to create or change an organization's culture with the goal of rehabilitating at-risk children instead of punishing them.[3] (*Id.* ¶¶ 11-13.)

---

[2] Plaintiff also brings a COBRA violation claim against York County pursuant to 29 U.S.C. § 1161, *et seq*. (Count III), which was not moved for dismissal.

[3] According to the YDC Website:

The Sanctuary Model is a trauma-informed method for creating or changing an organization's culture. Sanctuary pulls from a number of different fields and philosophies to facilitate this cultural change. It takes what we know about human nature, how people heal from trauma, the power of communities, and chaotic nature of change and applies some basic ***Tools***, principles, and the ***Seven Commitments*** to create a shared language. The Sanctuary terminology focuses primarily on ***S.E.L.F.***  This acronym stands for safety, emotional management, loss, and future. Every employee has gone through intense training that introduces trauma theory and addresses ways in which adversity and chronic stress can influence behaviors in the clients we serve. Sanctuary also recognizes the ways in which the whole organization is at risk of being influenced by the

(continued...)

Plaintiff worked with the YDC training supervisor at bi-weekly trainings to assure that all staff were in compliance with Department of Public Welfare regulations, the Sanctuary Model, as well as the Safe Crisis Management Curriculum. (*Id.* ¶ 15.) Plaintiff also served as the Massachusetts Youth Screening Instruments ("MAYSI") administrator. (*Id.* ¶ 16.) In that capacity, Plaintiff conducted MAYSI assessments of children, which inquired into sensitive areas such as past abuse or suicidal intentions. (*Id.* ¶ 18.)

During the course of her employment, Plaintiff became aware of a number of problems at YDC involving violations of mandatory protocols, regulations, and curriculum by staff, supervisors, and management, resulting in mistreatment of children. (*Id.* ¶ 19.) Specifically, Plaintiff alleges that she became aware of instances of inappropriate behavior by staff and supervisors including "threatening/challenging of children, using abusive language towards the children, staff failing to model appropriate behavior, neglect being used as a form of punishment, the making of racially insensitive jokes and/or statements, crumbling up resident grievances, denying or making conditional basic human rights of using the restroom or maintaining basic hygiene, and generally bullying and/or neglect." (*Id.* ¶ 20.)

From Fall 2010 until her termination on September 20, 2011, Plaintiff made attempts on a daily or weekly basis to raise concerns about the alleged wrongful behavior. (*Id.* ¶¶ 22, 23, 38, 66.) Plaintiff attempted to address the

---

[3](...continued)
effects of trauma, adversity, and chronic stress.

(Compl. ¶ 14) (emphasis in original.)

complaints during management meetings, staff meetings, as well as in private conversations with Wagner, as well as Assistant Director Kevin Sheppard, and Beverly Mackereth, Director of Human Services for York County. (*Id.* ¶¶ 31, 39.)

Plaintiff alleges that, as a result of her attempts to raise these concerns, Defendant Wagner engaged in a course of conduct to impede in her job performance. For example, Plaintiff alleges that Wagner directed Assistant Director Sheppard to remove reference materials from her office and moved her desk to a shared office, where the necessary privacy to conduct the MAYSI assessments was lacking. (*Id.* ¶¶ 30, 31, 33, 34.) Wagner also altered Plaintiff's work schedule, which Plaintiff alleges impeded her ability to evaluate and address various issues on each shift. (*Id.* ¶ 24.) Following a "heated" confrontation with an employee who Plaintiff implicated as one of the employees "failing to treat the children with fairness, dignity, and respect," Plaintiff was given a "last-chance agreement," despite not having a significant disciplinary history. (*Id.* ¶¶ 50-52.) Plaintiff attempted to contact Bob Nace, Director of Human Resources for York County, to discuss her objections to the last-chance agreement, but Nace referred her to Wagner, who in turn referred her back to Nace. (*Id.* ¶¶ 54- 56.)

On September 6, 2011, Plaintiff received two disciplinary actions: one for failing to complete a supervisor log sheet and another for failing to assure that staff members filled out a meal count sheet relating to the school lunch program. (*Id.* at 61.) At this time, Wagner also questioned Plaintiff about an email sent on August 21, 2011, from Plaintiff to Sheppard and Wagner requesting a "Red Flag" meeting to discuss various complaints of residents and shortcomings on the part of staff and supervisors. (*Id.* ¶ 62.) Wagner allegedly insinuated at the meeting that Plaintiff

sought out the complaints in an effort to discredit or damage Wagner's reputation. (*Id.*)  On September 20, 2011, Plaintiff was terminated.  (*Id.* ¶ 66.)  According to Plaintiff, Wagner told her that he interpreted her failure to fill out the supervisor logs as an indication that she no longer wanted to be employed by YDC.  (*Id.* ¶ 67.)  Plaintiff believes that any disciplinary action taken against her was pretextual and that she was terminated because of her history of advocating for children's rights.  (*Id.* ¶¶ 75, 76.)

### B.  Procedural History

On March 3, 2012, Plaintiff filed a complaint.  (Doc. 1.)  On May 4, 2012, Defendants filed a motion to dismiss and brief in support.  (Docs. 6 & 7.)  On May 18, 2012, Plaintiff filed a brief in opposition (Doc. 8) to which Defendants replied on May 31, 2012 (Doc. 10).  Thus, the motion is now ripe for disposition.

## II.  Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted).  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.     Discussion**

   **a.     First Amendment Retaliation Claim**

To establish a *prima facie* case of retaliation for engaging in First Amendment activity under 42 U.S.C. § 1983, Plaintiff must demonstrate: (1) that the activity at issue is protected by the First Amendment, (2) that Defendants' adverse action was sufficient to deter a person of ordinary firmness from exercising her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action. *Lauren W. ex. rel. Jean W. v. DeFalminis,* 480 F.3d 259, 267 (3d Cir. 2007); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (stating the test in a slightly different way: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action").

For a public employee, the scope of the First Amendment's protections are somewhat more limited than the ordinary citizen.  In *Garcetti v. Ceballos*, the Supreme Court stated that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," which would permit a government employer to, without violating the First Amendment, impose restrictions "directed at speech that has some potential to affect the entity's operation." 547 U.S. 410, 418 (2006).  Thus, to determine the first prong of the *prima facie* case for retaliation, whether the activity at issue is protected by the First Amendment, a government employee must show that the statement: 1) was made by the employee in her capacity as a citizen; (2) the statement involved a matter of public concern; and, (3) the government did not have an adequate justification for

treating the speaker differently than a member of the general public. *Hill*, 455 F.3d at 242.

Critical to the disposition of the instant motion is whether Plaintiff's statements regarding her concerns at YDC were made "as a citizen." It is well-settled that "a public employee does not speak as a citizen when she makes a statement 'pursuant to [her] official duties . . . .'" *Knaub v. Tulli*, 788 F. Supp. 2d 349, 356 (M.D. Pa. 2011) (quoting *Garcetti*, 547 U.S. at 421.) Thus, a court, when analyzing a public employee's First Amendment retaliation claim, must first consider whether the employee's speech is made pursuant to the employee's official duties. *See Karchnak v. Swatara Twp.*, 2009 U.S. Dist. LEXIS 58834, *24 (M.D. Pa. July 10, 2009). Stated another way, the critical fact is whether the activity or speech performed by a public employee is within the "scope of [the employee's] routine operations." *Id.* at *47 (citing *Foraker v. Chaffinch*, 501 F.3d 231, 241-42 (3d Cir. 2007)). "Whether a particular incident of speech is made within a particular plaintiff's job duties is a mixed question of fact and law." *Santucci v. Gross*, 2007 U.S. Dist. LEXIS 66921, *6-7 (E.D. Pa. Sept. 10, 2007) (citing *Foraker*, 501 F.3d at 240).

Defendants argue that Plaintiff's First Amendment claims should be dismissed because her reports of alleged wrong doing where taken as part of her specific job duties, and thus she was not speaking "as a citizen." (Doc. 7 at 6.) Specifically, Defendants argue that in her role as shift supervisor, she was responsible for assuring that employees were in compliance with regulations, models and curriculums. Defendants also rely on a line of cases in the Third Circuit that hold that communications made "up the chain of command" are not protected

speech.  *See, e.g., Foraker*, 501 F.3d 231; *Conrad v. Pa. State Police*, 2010 U.S. App. LEXIS 532 (3d Cir. 2010).  Defendants argue that because Plaintiff's statements were made only to supervisory authorities – Wagner, Sheppard, and Mackereth – the statements were "'complaints' made up the chain of command determined by the courts not to constitute 'citizens speech.'" (Doc 7 at 7.)

At this stage of the case, the court is unable to conclusively determine whether Plaintiff's reports of alleged wrongdoing were made pursuant to her official duties.  Plaintiff concedes that Defendants properly read the complaint to allege that Plaintiff, as shift supervisor, was responsible for general supervision of staff and residents at YDC, and to insure that protocols and regulations were followed.  (Doc. 8 at 7.)  However, such a generic and general description of Plaintiff's responsibilities does not permit the conclusion, especially when reading the facts in a light most favorable to Plaintiff, that the reports were within the scope of Plaintiff's routine operations.  Indeed, even if the record contained an official job description for the position of shift supervisor, which it does not, such a description would not necessarily allow the court to dispositively determine whether Plaintiff's actions fell within the scope of her employment.  *See Garcetti*, 547 U.S. at 424-25 ("[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the list of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."); *see also Karchnak*, 2009 U.S. Dist. LEXIS 58834, *54 ("simply because something is listed as an obligation of all [employees] does not mean it is within the specific 'professional duties' of a given employee.").  Moreover, unlike *Garcetti*,

where the plaintiff's retaliation claim ultimately failed because he admitted his statements at issue were made pursuant to his official duties, the complaint here contains no such concessions.  Simply put, without the benefit of discovery and a more complete factual record, the court can not determine whether Plaintiff's reports of alleged wrongdoing were made pursuant to her official duties.  Indeed, none of the cases relied upon by Defendants involved dismissal upon a Rule 12(b)(6) motion but rather involved factual determinations on summary judgment or post-trial.  Accordingly, Defendants' motion will be denied on this ground.

### b.     **Pennsylvania Whistleblower Law Claim**

The Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.*, prohibits certain employers from discriminating or retaliating against an employee who makes a good faith report to the employer or appropriate authority of wrongdoing or waste. 43 P.S. § 1423.  A "wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or a code of conduct or ethics designed to protect the interest of the public or the employer."  43 P.S. § 1422.

Defendants argue that this claim must be dismissed because the Sanctuary Model is neither a federal or state statute or regulation nor an ordinance or code of conduct or ethics.  (Doc. 7 at 9.)  Rather, Defendants argue, the Sanctuary Model is merely an internal policy adopted by YDC and thus a violation of the Sanctuary Model does not constitute a "wrongdoing" under the Whistleblower Law. (*Id.*)

The determination of whether the Sanctuary Model constitutes a statute, regulation, ordinance, code of conduct, or code of ethics is a mixed question of law

and fact. In *Connor v. Clinton Cnty. Prison*, the court found on summary judgment that a prison policy requiring certain documentation at the time of a prisoner's release did not fall under the Whistleblower Law. 963 F. Supp. 442, 451 (M.D. Pa. 1997). The court found the fact that there was no formal, written enactment of the policy to be inconsistent with the plain language of the statute. *Id.* Thus, the court concluded that the Whistleblower law was inapplicable. *Id.*

Plaintiff counters by arguing that the Sanctuary Model goes beyond the scope of the policy at issue in *Connor* because the Model was adopted to convert a facility from a detention center to a center aimed at the rehabilitation of at-risk and abused children. As such, the Model acts more as code of conduct for YDC employees. (Doc. 8 at 13.) Additionally, Plaintiff points out that the adoption of the Model was an official legislative action of the York County Board of Commissioners, and thus did not exhibit the informality of the internal policy at issue in *Connor*. (*Id.* at 9.)

Here again, without a more complete factual record, the court cannot discern how much weight to afford the Sanctuary Model or whether the Model constitutes an internal policy or a code of conduct. Such determinations would likely turn on, *inter alia*, evidence indicating the scope and the formality of the Model. Accordingly, Defendants' motion will be denied as to Count II.[4]

---

[4] Defendants also argue for dismissal on the grounds that Plaintiff fails to adequately indicate the specific violations of federal or state statutes or regulations of which she made a good faith report. However, to survive a motion to dismiss, a plaintiff need not enumerate specific laws in the complaint, provided the type of conduct alleged would otherwise fall within the ambit of the Whistleblower Law. *See Keefer v. Durkos*, 371 F. Supp. 2d 686, 692 (W.D. Pa. 2005). Aside from Defendants' argument above, which this court rejected, Defendants do not raise any additional arguments to support dismissal of Plaintiff's whistleblower claim. The court finds that the facts alleged otherwise fall within the ambit of the Whistleblower Law, and thus Plaintiff need not enumerate specific
(continued...)

### c. <u>**Official Capacity Claim against Defendant Wagner**</u>

Defendants argue for the dismissal of the official capacity claim[5] against Defendant Wagner because claims are also brought against York County, and thus the official capacity claim and claims against York County are duplicative. Defendants are correct in this regard. A suit against a government official in his or her official capacity is synonymous with a claim against the government itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *D'Altilio v. Dover Twp.*, 2007 U.S. Dist. LEXIS 71414 (M.D. Pa. Sept. 26, 2007) (dismissing claims against township supervisors in their official capacity because those claims were duplicative of the claims against the township). Here, it is undisputed that YDC was owned and operated by York County, and Wagner, employed by the County as director of YDC, was sued in his official capacity. Therefore, the claim against Wagner in his official capacity is duplicative of those against York County and will be dismissed. Leave to amend will be denied as futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).[6]

---

[4] (...continued)
laws in the complaint. Accordingly, this argument also fails.

[5] Defendant Wagner was also sued in his individual capacity. That claim was not moved for dismissal by Defendants.

[6] Moreover, Plaintiff failed to address this argument in the brief in opposition to Defendants' motion to dismiss. Thus, the court could dismiss the official capacity claim against Wagner on the additional ground that Plaintiff has abandoned that claim. *See Hoffman v. Dougher*, 2006 U.S. Dist. LEXIS 67286, *14 (M.D. Pa., Sept. 20, 2006) (citing *D'Angio v. Borough of Nescopeck*, 35 F. Supp. 2d 256, 265 (M.D. Pa. 1999) and Local Rule 7.6).

**IV.      Conclusion**

For the aforementioned reasons, Defendants' motion to dismiss will be denied as to Plaintiff's First Amendment Retaliation and Whistleblower claims and will be granted as to the official capacity claim against Defendant Wagner. An appropriate order will issue.

                                                   s/Sylvia H. Rambo  
                                                   United States District Judge

Dated:  June 14, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ELMIRA C. SEXTON,** : | |
| : | **No. 1:12-CV-00402** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **COUNTY OF YORK,** : | |
| **PENNSYLVANIA t/b/d/a YORK** : | |
| **COUNTY YOUTH DEVELOPMENT** : | |
| **CENTER; RODNEY WAGNER,** : | **JUDGE SYLVIA H. RAMBO** |
| **individually and in his official** : | |
| **capacity as Director of YDC** : | |
| : | |
| **Defendants** : | |

# O R D E R

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** that Defendants' partial motion to dismiss (Doc. 6) is **GRANTED** in part and **DENIED** in part as follows:

1. The motion is **DENIED** as to Plaintiff's First Amendment Retaliation and Pennsylvania Whistleblower claims;

2. The motion is **GRANTED** as to Plaintiff's official capacity claim against Defendant Wagner. The Clerk of Court shall amend the caption accordingly.

                                                                s/Sylvia H. Rambo
                                                             United States District Judge

Dated: June 14, 2012.